SARAH McGILVERY, ADMINISTRATRIX, PLAINTIFF IN ERROR, v. THE NEWARK ELECTRIC LIGHT AND POWER COMPANY, DEFENDANT IN ERROR.

Argued June 21, 1899—Decided November 2', 1899.

In an action against an electric light company for causing the death of the plaintiff's intestate, who was an employe of the traction company, the plaintiff proved that the employes of the traction company broke down a wire of the electric light company, the naked end of which was touched to a metallic hydrant and gave no flash, and that shortly afterwards the intestate handled this wire and was killed.   It was also proved by an expert witness called by the plaintiff that the failure to elicit a spark from the wire indicated either that the circuit was per-

McGilvery v. Electric Light and Power Co.    *63 N. J. L.*

fectly insulated or that the current was off, and that whether the breaking and grounding of the wire would be indicated at the defendant's power-house depended upon "how severe the ground was," of which there was no proof. *Held,* that this testimony was incapable of supporting the burden of proof necessary to the plaintiff's recovery, and that a verdict should have been directed for the defendant.

On error to the Supreme Court. For opinion of the Supreme Court, see 33 *Vroom* 451.

For the plaintiff in error, *Samuel Kalisch.*

For the defendant in error, *Chauncey G. Parker* and *Richard V. Lindabury.*

The opinion of the court was delivered by

GARRISON, J. The cause of the death of the plaintiff's intestate was a current of electricity passed by the defendant company through the wires of its electric light system. The plaintiff's allegation is that such transmission was, under the circumstances, a negligent act. The facts proved are that one of the fellow-servants of the deceased let the heavy feed-wire of the traction company fall upon a wire of the electric light company, breaking it and bringing it down to the street; that another co-employe touched the naked end of this wire to a metallic hydrant and elicited no flash, and that a few minutes later the plaintiff's intestate took this wire in his hand and was killed. Upon this meagre state of facts the gravamen of the plaintiff's action is that the defendant had notice of the occurrence of the accident to this wire and negligently disregarded it, thereby causing the death for which suit is brought.

The hypothesis is as follows: That the fall of the feed-wire broke the defendant's wire and brought it down to the street; that this led to the grounding of the wire; that this grounding caused a short circuit; that the short circuit knocked out a plug or fired a fuse in the power-house of the defendant; that this caused a cessation of the flow of the cur-

rent through the wire, and gave notice to the defendant of the happening of an accident, and that in negligent disregard of this notice the defendant reinserted the plug, or substituted a fuse, which restored the current that thereupon flowed again into the wire and caused the death of the intestate.

By comparing this tentative chain of causation with the facts proved it will be perceived that, excepting the fall of the wire and its fatal handling by McGilvery, everything rests in inference, if there be adequate testimony, or in conjecture, if the evidence be legally inadequate.

The testimony by which the plaintiff sought to supply the basis for such inferences was that of an electrical expert whose opinion was asked upon two questions :

*First.* What was indicated by the failure to elicit a spark when the wire was touched to the hydrant? And

*Second.* What indication would there be at the power-house when a wire broke and was grounded ?

The answer to each of these questions is vital to the plaintiff's case, for without proof that the current was off there could be no inference that it had been turned on again, and without proof that the grounding of the wire was indicated at the power-house there would be no suggestion of notice to the defendant and hence no inference of negligence.

To the first of these questions the witness replied that the failure of the wire to send a flash when touched to the hydrant indicated one of two things, either that the circuit was perfectly insulated, or that the current was off. And to the leading question, " Wouldn't it positively show that the power was off?" he answered, "No, not if the whole circuit was insulated from the ground ; you can test one single portion of it against the ground without getting a flash."

Inasmuch as the normal and hence presumptive state of the circuit was one of perfect insulation, even as to the dynamo, as is shown by the testimony, and as there was no pretence of deficient insulation, the hydrant test was no proof at all that the current was off; and the same remark applies to the touching of the wire by the witness, who handed it to

McGilvery. These are the two circumstances by which it is sought to show that the current was off. Standing alone, without expert connection, these facts are absolutely without significance, while with the expert explanation they are equally consistent with the presumption of the continuity and normal condition of the defendant's circuit as they are with the specific act of negligence alleged, so that in no aspect do they afford that preponderance of proof that is absolutely essential to the plaintiff's recovery.

The other point upon which the plaintiff had recourse to expert testimony was: "What indication would there be at the power-house when a wire breaks and is grounded?" To which the answer and subsequent questions were as follows:

"*A.* There might be either a rise in the current in the amperage, or the rise might be sufficient to blow through the plug or cut off the fuse.

"*Q.* It would be one or the other?

"*A.* Not necessarily."

And upon cross-examination:

"*Q.* I understand you to say that the grounding of a wire will not always blow out a fuse?

"*A.* No, not invariably; it depends upon how severe the ground is."

What is meant by "a severe ground" was not shown. It was assumed upon the argument to mean a short circuit, but how short a circuit must be to be severe was not shown, nor was there any evidence as to the distance of the point of break from the power-house or any other proof from which the severity or "shortage" of this particular ground or cir-cuit could be ascertained.

This likewise leaves the plaintiff's hypothesis barren of any testimony capable of sustaining the inference that the defendant had notice of the accident, still less of sustaining the necessary burden of proof upon a point that is essential to the gravamen, for the plaintiff's complaint is not that the defendant was careless in the construction, inspection or repair of its wires, or that in the ordinary operation of its

line it was negligent, or that it wrongfully kept its current on or failed to turn it off, but that, having had notice that it was off, carelessly turned it on—in fine, that it did an affirmative act that was negligent in view of the significance it ought to have attached to the notice it had received. The real negligence, therefore, is the disregard of the alleged notice. Hence, if there were no notice (or, what is the same thing, no proof of notice) there could be no inference of negligence; and of notice we have seen that there was no proof, certainly no preponderating evidence.

This doctrine of the plaintiff's preponderance of evidence is one of substantive law and not a mere matter of procedure. Whether, in a given case, the testimony is capable of sustaining the burden of proof is a court question, both before verdict and after. A verdict does no more than the court would do without it, viz., solves all fairly-debatable inferences in the plaintiff's favor. If, notwithstanding this, the essential facts are still in equipoise, there is no preponderance of proof, and a jury is impotent to supply by its verdict a probative weight that is lacking in the testimony. It is not a question of the weight of conflicting testimony such as trial courts settle as incident to their verdicts, but of the sufficient compliance with a legal rule that appellate courts notice and enforce.

This rule was, at the trial, invoked by the motion to direct a verdict upon the ground that there was no evidence of negligence on the part of the defendant. In my opinion that motion should have prevailed. Upon this ground I shall vote to affirm the judgment of the Supreme Court.

*For affirmance*—DIXON, GARRISON, LIPPINCOTT, COLLINS, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH. 9.

*For reversal*—None.